**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**PAUL W.,[1]**

**Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**Case No. 3:24-cv-8712**
**Magistrate Judge Cheryl L. Pollak**

# OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Paul W. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Frank Bisignano, the Commissioner of Social Security, is substituted as Defendant in his official capacity.

## I. PROCEDURAL HISTORY

On July 29, 2022, Plaintiff filed an application for disability insurance benefits, alleging that he had been disabled since an alleged onset date of November 1, 2019. R. 80–81, 166–70. Plaintiff's application was denied initially and upon reconsideration. R. 74-91, 98-100. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 101–02. ALJ Elana Hollo held a telephonic hearing on September 7, 2023, at which Plaintiff, who was represented by counsel Glenn B. Carey, testified, as did an impartial vocational expert, Tanja Hubacker. R. 40-73.

In a decision dated January 10, 2024, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 1, 2019, the alleged onset date, through June 30, 2022, the last date insured. R. 24-35. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 20, 2024. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 21, 2025, Plaintiff consented to disposition of the matter by a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 7.[3] On April 20, 2026, the case was reassigned to the undersigned. ECF No. 22. The matter is now ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

(“Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.”) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). “[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice.” *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court “cannot tell if significant probative evidence was not credited or simply ignored.” *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court’s duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter “a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing.” 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ’s decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ’s findings are not the product of a complete review which “explicitly weigh[s] all relevant, probative and available evidence” in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp. 3d 512, 518 (D.N.J. 2016). A decision to “award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits.” *Podedworny*, 745 F.2d at 221-22 (citation and quotation

omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B. Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §

404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 47 years old on the date last insured. R. 33. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2022. R. 26. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity between November 1, 2019, his alleged onset date, and the date last insured of June 30, 2022. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the thoracic and lumbar spine depression, generalized anxiety disorder, schizophrenia spectrum disorder and adjustment disorder. *Id*. The ALJ also found that the following medically determinable impairments were not severe: left shoulder impairment, cervical spine impairment, and testicular pain R. 26-27.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 27-29.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various exertional and non-exertional limitations. R. 29–33. The ALJ also found that the Plaintiff was unable to perform his past relevant work as a traffic controller, but that he was able to make "a successful adjustment to other work that existed in significant numbers in the national economy," citing the testimony of the vocational expert who identified the following representative occupations: "marker" (30,000 positions nationally); routing clerk (50,000 positions nationally); and cleaner (100,000 positions nationally). R. 34–35.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief*, ECF No. 14 ("*Pl. Br.*"); *Plaintiff's Reply Brief*, ECF No. 21 ("*Pl. Reply*"). Specifically, Plaintiff contends that the ALJ formulated the RFC without adequate medical opinion evidence, ignoring the initial disability determination that found insufficient evidence to determine the extent of Plaintiff's physical and mental impairments, and substituting her own lay interpretation of the medical evidence. *Pl. Br*. at 8-13. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 20 ("*D. Br.*").

## IV. SUMMARY OF RELEVANT MEDICAL EVIDENCE

In determining whether Plaintiff was disabled and the extent of limitations caused by his impairments, the ALJ first reviewed Plaintiff's testimony at the hearing, in which he stated that he stopped working as an independent handyman in 2019 "due to the cumulative effects of back

pain and [he] was unable to stand or walk." R. 29. The ALJ noted that Plaintiff testified that he attended physical therapy in 2022 for low back pain, and that he became depressed due to the "emotional toll" of his conditions. *Id.* The ALJ noted Plaintiff's testimony that he could "walk a couple of blocks and intermittently using walking crutches which he obtained in the beginning of 2020 or 2021, and which Plaintiff stated were recommended by his osteopath.[4] R. 30. Plaintiff represented that he could lift and carry less than 8 pounds comfortably and sit for between 20 minutes and an hour, depending on pain. *Id.* The ALJ noted that Plaintiff testified that he lives with his brother, drives about three times a week, and that his brother and mother help him with daily activities. *Id.*

Although the ALJ concluded that the "medically determinable impairments could reasonably be expected to cause the alleged symptoms," she discounted Plaintiff's statements concerning the "intensity, persistence and limiting effects," as "not entirely consistent with the medical evidence and other evidence in the record. . . ." *Id.* In addressing the objective medical evidence, the ALJ cited a March 13, 2020 MRI of the lumbar spine, which showed "multilevel disc disease which caused mild canal stenosis and mild foraminal narrowing at L1-L2, moderate canal stenosis and mild foraminal narrowing at L4-L5, and mild foraminal narrowing at L5-L6." *Id.* The ALJ noted that there was "no mention of or other indications consistent with nerve root involvement or impingement." *Id.* An MRI of the thoracic spine taken the same day showed "multilevel degenerative changes with no more than minimal canal stenosis." *Id.* (citing Ex. 3F).

The ALJ also noted a subsequent MRI of Plaintiff's cervical spine, performed on February 11, 2021, indicated "no foraminal or canal stenosis and no signal or cord abnormalities

---

[4] In her discussion, the ALJ noted that she had been unable to locate any recommendation for such assistive devices in the record and that Plaintiff's representative "acknowledged that nothing in the record supported this testimony[.]" R. 30, n.1.

but was positive for dextroscoliosis at 60 degrees." *Id*.

The ALJ found that there was no medical evidence in the record consistent with Plaintiff's testimony that he attended physical therapy and received injections for back pain, and noted that during a "Men's Preventative Visit" with his primary care provider on October 25, 2021, "physical examination findings were unremarkable," with the exception of thoracic spasm. *Id*. The ALJ also noted that while Plaintiff complained of testicular pain on April 27, 2022, he refused to go to the Emergency Department despite the recommendation of his primary care provider. *Id.*

The ALJ cited a repeat MRI of the lumbar spine on July 8, 2022, noting the finding of "a disc bulge at L4-L5 encroaching into the neural foramina bilaterally with resultant moderate foraminal narrowing. Bilateral facet hypertrophy resulted in a mild degree of spinal stenosis." R. 31 (citing Ex. 15F). The MRI also showed that at L5-S1, there was a "central disc protrusion with annual [sic] tear slightly indenting the thecal sac resulting in moderate bilateral foraminal narrowing but no spinal stenosis." *Id.* The ALJ noted that there was "no indication of exacerbation or progression from the prior study." *Id.*

The ALJ also discussed the examination of Plaintiff that occurred on September 6, 2022, two months after the date last insured, in which he complained of chronic back pain. R. 31. He reported experiencing a stabbing pain in his back near the sacroiliac joint that he experienced after playing with and chasing his son, describing the pain level as 8 out of 10, worsening with driving or moving. *Id.* The ALJ noted that on examination, Plaintiff was comfortable lying down, but exhibited some discomfort moving, and straight leg raise testing was negative, and "there were no other abnormalities on physical examination." *Id.* (citing Ex. 4F/3).

As for Plaintiff's mental impairments, the ALJ noted that prior to being involuntarily

hospitalized on May 30, 2021, there was no evidence of treatment or evaluation. R. 31. The ALJ noted that he had been prescribed Zyprexa, Abilify, Wellbutrin, and Suboxone, but had not been compliant with his medication. *Id.* He had been abusing marijuana, CBD oil, and mushrooms to control his mental illness. *Id.* During the intake evaluation on May 30, 2021, Plaintiff was "found to be extremely bizarre, preoccupied, uncooperative, responding to internal stimuli," as well as "disheveled, guarded, withdrawn, fidgety and restless," "depressed and Dysphoric, with flat affect, poor judgment and insight, and paranoid thought content." *Id.* After admission, Plaintiff refused medications and had to be restrained, continuing to be "irritable, grossly disorganized, intrusive," and refusing medication. *Id.* By June 9, 2021, he became calmer and more lucid, and after taking Haldol for agitation, he reported feeling "good." *Id.* He was discharged in stable condition on June 10, 2021, and his behavior was good and he appeared calm, and he was referred to Serenity Oaks in Florida for marijuana use/dependence disorder. *Id.* On discharge, he was prescribed Neurontin 300 mg, Haldol 5 mg as needed for agitation, Vistaril 50 mg as needed for anxiety, and Trazadone for sleep. *Id.* His discharge diagnoses were unspecified psychotic disorder and hallucinogen use disorder. *Id.* (citing Ex. 2F).

On August 26, 2021, Plaintiff attended an intake evaluation at Richard Hall Community Counseling ("Richard Hall"), where he acknowledged using medical marijuana as well as homemade tinctures from mushrooms he found in the woods. R. 32. He stated that he believed his psychotic symptoms had been brought on by marijuana use, although he claimed ongoing depression. *Id.* The mental status evaluation was normal, scoring a 7 on the PHQ-9 depression inventory screen, indicating "minimal depression symptoms," and he did claim chronic back pain for which he was being followed by specialists. *Id.*

The ALJ referenced an October 6, 2021 psychiatric evaluation at Richard Hall, where he

reported not using marijuana since his hospitalization. *Id.* His mental status evaluation was normal except for his self-reported decrease in sleep. *Id.* He was assessed with psychotic symptoms caused by medical marijuana use, but was no longer having psychosis and no longer taking Zyprexa. *Id.* He was diagnosed with depression and his Wellbutrin was changed to Wellbutrin SR, and his Trazadone was increased. *Id.* (citing Ex. 5F/1). Subsequent visits for medication management noted few or no symptoms, although he had issues with his wife from whom he had separated. R. 32. On November 12, 2021, his mental status examination was normal except for a "sour" mood when dealing with his wife. *Id.* Plaintiff was maintaining his CDL license but was not driving commercially.

The ALJ cited an examination in January 2022 where Plaintiff reported that he was "doing well and feel like I'm improving by leaps and bounds." R. 32. "Mental status examination was unremarkable." *Id.* In August 2022, shortly after the date last insured, Plaintiff's mental status examination was "normal," except for a "flat mood and some irritability in regard to his wife;" they were going through a divorce. *Id.* The ALJ noted that since January 2022, Plaintiff had been receiving telehealth counseling from SAFE in relation to domestic abuse, and in a letter dated October 18, 2022, SAFE indicated that Plaintiff had been compliant in attending both group and individual appointments and "appeared to be making progress toward his therapy goals." *Id.* (citing Ex. 6F).

Following his recitation of the above record evidence, the ALJ stated:

> The above evidence is not consistent with the claimant's testimony. Although the claimant testified that he is able to stand for only moments and is extremely limited in lifting and walking, the record notes that shortly after the date last insured, he was playing with and chasing his son around for several days, and was engaging in activities such as cooking. There are no specialist or physical therapy notes in the record, despite the claimant's testimony that he attended therapy and received injections related to back pain. Primary care notes do not support the severity of spinal symptoms alleged by the claimant, and there are only sporadic complaints

> by the claimant. (Ex. 4F). Although the claimant testified that he ambulates with two canes which were recommended by a doctor, there is no evidence of such recommendation by any physician. In addition, there are no examination findings indicating gait dysfunction, abnormal stance, weakness, or reduced range of motion and straight leg raise testing is consistently negative. (Ex. 4F).

R. 32–33.

The ALJ also noted that "Reviewing medical and psychological consultants for the Disability Determination Service (DDS) found no severe physical impairments and insufficient evidence to rate the claimant's mental limitations at both the initial and reconsideration levels." R. 33. The ALJ found these opinions "not persuasive as later received evidence and the hearing testimony support the existence of severe physical limitations, based primarily on imaging studies, as well as sufficient mental health evaluation and treatment notes to assess the part "B" criteria of the applicable mental listings." R. 33.

## V. DISCUSSION

Plaintiff challenges the ALJ's RFC determination, arguing that the ALJ failed to adequately explain from the evidence of record the basis upon which the ALJ relied in reaching her assessment of Plaintiff's RFC. *Pl. Br*. at 6–12. The Court agrees that the mental RFC determination requires remand, but for reasons different than those raised by Plaintiff. *See Bryan P. v. Comm'r of Soc. Sec*., No. 1:22-CV-05496, 2023 WL 7151223, at *6–7 (D.N.J. Oct. 31, 2023) ("District courts regularly interpret *Sims* [*v. Apfel*, 530 U.S. 103, 110–11 (2000)] to allow for *sua sponte* review of issues not raised by the parties in the SSA context.") (collecting cases); *West v. Kijakazi*, No. 3:21-CV-01350, 2023 WL 2742746, at *4 n.3 (M.D. Pa. Mar. 31, 2023)

("A reviewing court may *sua sponte* address issues in social security cases.") (quoting *Sparaney v. Kijakazi*, No. 3:20-cv-02054, 2022 WL 969619, at *9 n.9 (M.D. Pa. Mar. 30, 2022)).[5]

A claimant's RFC is the most the claimant can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). The ALJ need include only "credibly established" limitations in the RFC. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record"). However, "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

---

[5] Plaintiff also argues that the ALJ's physical RFC limitations are inconsistent with the record and argues that the ALJ should have further developed the record. However, having found another basis to remand this action, the Court does not reach Plaintiff's other arguments. *See Stephen S. v. Comm'r of Soc. Sec.*, No. 24-CV-10055 (CPO), 2025 WL 2962465, at *6 (D.N.J. Oct. 20, 2025) ("Because the Court concludes that this matter must be remanded for further proceedings based on the ALJ's denial of Plaintiff's right to cross-examine Dr. Lazarus, the Court need not reach Plaintiff's remaining arguments on appeal."); *Charran v. Saul*, 509 F. Supp. 3d 80, 87 n.3 (D.N.J. 2020) ("Because the Court remands the action on this basis, the Court declines to address Plaintiff's other arguments raised in the merits briefs, ECF Nos. 16, 17, 18.").

In the case presently before the Court, the ALJ's recitation of the evidence above reflects that the ALJ appeared to find that Plaintiff, with the exception of his psychiatric hospitalization from May 30, 2021, to June 10, 2021, had generally normal mental status examinations. R. 29–33. Nevertheless, the ALJ fashioned a RFC with several mental functional limitations:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the individual can never climb ladders, ropes, or scaffolds; can perform other postural maneuvers occasionally; must avoid concentrated exposure to driving vehicles, unprotected heights, and moving machinery; can have only occasional interaction with supervisors, coworkers, and the general public and cannot perform work involving shared tasks with coworkers; any work must be in a low stress job which is defined as having only occasional decision making and occasional changes in the work setting; can understand, remember, and carry out detailed but uninvolved written or oral instructions; no work involving assembly line work or hourly quotas; and any work must be as self-paced as possible meaning that any production requirements can be accomplished by the end of the workday or work shift.

R. 29.

In explaining these mental limitations, the ALJ stated that although Plaintiff experienced "psychotic symptoms and schizoaffective features shortly before his hospitalization in May of 2021, he recovered during his admission, and has not had a recurrence of these symptoms since his discharge." R. 33. The ALJ also stated that the "treating notes contain self-reports of improvement with medication compliance, and normal mental status examination findings." *Id*. However, this explanation does not address how the ALJ determined the mental functional limitations, including, *inter alia*, that Plaintiff can have only occasional interaction with supervisors, coworkers and the general public; cannot perform work involving shared tasks with coworkers; that any work must be in a low stress job which is defined as having only occasional decision making and occasional changes in the work setting; and that Plaintiff can understand, remember, and carry out detailed but uninvolved written or oral instructions. R. 29, 33.

Plaintiff correctly notes that there is nothing in the ALJ's decision that explains the basis for these proposed limitations. Nowhere in the recitation of the medical evidence discussed by the ALJ is there any reference to why she found "occasional" interaction with coworkers and supervisors to be appropriate instead of limited interaction or no interaction. Similarly, there is no cited explanation for why the ALJ found "low stress" work appropriate or why the ALJ concluded that the Plaintiff could engage in "occasional decision making" or handle "occasional changes."

The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests," sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

By not explaining how the medical record supported the various mental limitations included in the RFC, the ALJ failed to build a "logical bridge" between the evidence and her decision. *See Bienkowski v. Bisignano*, No. 4:24-CV-1714, 2025 WL 1668328, at *7 (M.D. Pa. June 12, 2025) ("[A]s part of the ALJ's duty of articulation, the ALJ must establish a logical

bridge between the evidence and the ALJ's legal conclusions and factual findings."); *Glenda M. v. Comm'r Soc. Sec.*, Civ. No. 22-03137, 2023 WL 6387515, at *6 (D.N.J. Sep. 29, 2023) ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [his] conclusions.") (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). Moreover, the ALJ's failure in this regard takes on greater significance considering Plaintiff's argument that the medical record also reflects that he "was repeatedly noted having 'emotional block' barriers to learning." *Pl. Br.* at 11 (citing R. 376, 397, 406, 783). Given the present record and the lack of a sufficient explanation as to how she arrived at the mental RFC limitations, the Court is unable to follow the ALJ's reasoning. *See Bienkowski*, 2025 WL 1668328, at *7; *Glenda M.*, 2023 WL 6387515, at *6.

The lack of clarity in the ALJ's reasoning therefore requires remand. While it is true that the ALJ need not use "particular language or adhere to a particular format" when considering opinion evidence, the ALJ must still provide a "discussion of the evidence" and an "explanation of reasoning" "sufficient to enable meaningful judicial review." *Diaz*, 577 F.3d at 504 (internal quotation marks and citations omitted); *see also Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

In this particular case, without engaging in the work of the ALJ, this Court cannot determine which of the medical findings in this recitation led the ALJ to her determination of Plaintiff's mental functional limitations. *See also Messina v. Comm'r of Soc. Sec.*, 844 F. App'x 586, 589–90 (3d Cir. 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations.") (citations omitted); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d

Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin*., 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

In short, the ALJ's failure to explain how she reached the specific mental limitations from the medical evidence upon which she relied precludes meaningful judicial review based on the present record in this particular case. *See Brownsberger v. Kijakazi*, No. 3:20-CV-01426, 2022 WL 178819, at *7 (M.D. Pa. Jan. 18, 2022) (remanding where, among other things, the "ALJ d[id] not provide any citations to specific evidence on the record to explain his reasoning. . . .").

In sum, without further explanation, the Court simply cannot determine from this record if substantial evidence supports the ALJ's mental RFC limitations. This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date: August 6, 2026

*s/Cheryl L. Pollak*
CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE